**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TUNDE ADEYI,                          :
                                      : Civil Action No. 09-5316 (JBS)
            Plaintiff,                :
                                      :
                                      :
            v.                        :   **OPINION**
                                      :
FCI FT. DIX HEALTH SERVICES,          :
et al.,                               :
                                      :
            Defendants.               :


**APPEARANCES:**

        TUNDE ADEYI, Plaintiff pro se
        #55329-053
        FCI Fort Dix
        P.O. Box 2000
        Fort Dix, New Jersey 08640

**SIMANDLE**, District Judge

        Plaintiff, Tunde Adeyi, a federal inmate currently confined

at the FCI Fort Dix in Fort Dix, New Jersey, seeks to bring this

action in forma pauperis.  Based on his affidavit of indigence

and the absence of three qualifying dismissals within 28 U.S.C.

§ 1915(g), the Court will grant plaintiff's application to

proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a)

(1998) and order the Clerk of the Court to file the Complaint.

        At this time, the Court must review the Complaint, pursuant

to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it

should be dismissed as frivolous or malicious, for failure to

state a claim upon which relief may be granted, or because it

seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

I.  <u>BACKGROUND</u>

Plaintiff, Tunde Adeyi ("Adeyi"), brings this civil rights action, pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), against the following defendants: FCI Fort Dix Health Services and FCI Fort Dix Counselor Simms.  (Complaint, Caption and ¶¶ 4b, 4c).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Adeyi alleges that he has been incarcerated since 2001, and his prison medical file reflects that he wears hearing aids for near deafness, and that he suffers from chronic knee, elbow and back pain.  Adeyi is prescribed Neomycin/Poly B/HC Otic Soin 10 ML, Fluisolide Nasal 25 ML SOL, and Ibuprofen 600 MG.  He also has had many x-rays of his knees and receives medical treatment at a local hospital near FCI Fort Dix.

Based on his medical history, on February 14, 2008, Adeyi submitted a request to be removed from snow removal crew. Nevertheless, despite plaintiff's well-documented medical problems, defendant Simms denied plaintiff's request and ordered Adeyi to shovel snow.  As a result of this physical exertion,

Adeyi "suffered adverse consequences" and was bedridden for several days.

On February 22, 2008, when Adeyi was escorted to the Special Housing Unit ("SHU"), Simms was notified to pack and secure plaintiff's personal property in his cell.  Simms did not pack Adeyi's belongings, and consequently, while Adeyi was in SHU, some of his personal property got lost.  The lost items included: a wristwatch, a book plaintiff was writing for publication, a hearing aid case, and a BP-11 grievance form.  Adeyi filed a claim for return of his property, via an Administrative Remedy Procedure BP-8 form, on February 17, 2009, almost on year later.

On March 26, 2008, Adeyi was inexplicably assigned to a top bunk despite a medical pass for a bottom bunk assignment. Accordingly, Adeyi asked Simms to be reassigned to a bottom bunk, which Simms granted.  However, on April 7, 2008, Adeyi again was moved to a top bunk.  He initially complied with the officer's order to move to a top bunk, but Adeyi did go to FCI Fort Dix Health Services to get a copy of his bottom bunk pass.  After receiving another copy of his medical pass for a bottom bunk, Adeyi showed the pass to Simms, who did not give plaintiff a bottom bunk assignment.  Moreover, Simms wrote an incident report against Adeyi for an unauthorized bunk move, which plaintiff claims was a retaliatory action against him.

Adeyi complains that at his disciplinary hearing he was not allowed to call witnesses in violation of his right to due process under <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974).  He also alleges that after an amended incident report was written, the FCI Fort Dix staff violated his procedural rights by delivering the report to plaintiff at his locker instead of personal delivery, postponing the hearing for no reason, and not providing the report in the specified time frame.

Adeyi seeks compensatory and punitive damages in excess of $5 million.

## II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding <u>in forma pauperis</u> or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to <u>sua sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to <u>sua sponte</u> screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

4

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court

5

reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  <u>Id</u>.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Fed.R.Civ.P.</u> 8(a)(2).[1]  Citing its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "<u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." <u>Fed.R.Civ.P.</u> 8(d).

cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."  <u>Fed. Rule Civ. Proc.</u> 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Iqbal</u>, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id</u>. at 1948.  The Supreme Court's ruling in <u>Iqbal</u> emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  <u>Id</u>. at 1949-50; <u>see also</u> <u>Twombly</u>, 505 U.S. at 555, & n.3; <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that <u>Iqbal</u> provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before <u>Twombly</u>.  <u>Fowler</u>, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in <u>Iqbal</u> when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be
> separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard
> any legal conclusions. [<u>Iqbal</u>, 129 S.Ct. at 1949-50<u>]</u>.
> Second, a District Court must then determine whether the
> facts alleged in the complaint are sufficient to show that
> the plaintiff has a "plausible claim for relief." [<u>Id.</u>]  In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.  <u>See</u> <u>Phillips</u>,
> 515 F.3d at 234-35.  As the Supreme Court instructed in
> <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'"  <u>Iqbal</u>, [129 S.Ct. at
> 1949-50].  This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense." <u>Id</u>.

<u>Fowler</u>, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this <u>pro</u> <u>se</u> pleading must be construed liberally in favor of Plaintiff, even after <u>Iqbal</u>.  See <u>Erickson v. Pardus</u>, 551 U.S. 89

---

[2]   In <u>Conley</u>, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  <u>Id</u>., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

(2007).  Moreover, a court should not dismiss a complaint with
prejudice for failure to state a claim without granting leave to
amend, unless it finds bad faith, undue delay, prejudice or
futility.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-
111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir.
2000).

## III.  BIVENS ACTIONS

Adeyi asserts that his constitutional rights have been
violated, and he is proceeding under Bivens v. Six Unknown Named
Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  In
Bivens, the Supreme Court held that one is entitled to recover
monetary damages for injuries suffered as a result of federal
officials' violations of the Fourth Amendment.  In doing so, the
Supreme Court created a new tort as it applied to federal
officers, and a federal counterpart to the remedy created by 42
U.S.C. § 1983.  The Supreme Court has also implied Bivens damages
remedies directly under the Eighth Amendment, see Carlson v.
Green, 446 U.S. 14 (1980), and the Fifth Amendment, see Davis v.
Passman, 442 U.S. 228 (1979).

Bivens actions are simply the federal counterpart to
§ 1983 actions brought against state officials who violate
federal constitutional or statutory rights.  Egervary v. Young,
366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049
(2005).  Both are designed to provide redress for constitutional
violations.  Thus, while the two bodies of law are not "precisely

9

parallel", there is a "general trend" to incorporate § 1983 law into <u>Bivens</u> suits.  <u>Chin v. Bowen</u>, 833 F.2d 21, 24 (2d Cir. 1987)).

In order to state a claim under <u>Bivens</u>, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  <u>See</u> <u>Mahoney v. Nat'l Org. For Women</u>, 681 F. Supp. 129, 132 (D. Conn. 1987)(citing <u>Flagg Brothers, Inc. v. Brooks</u>, 436 U.S. 149, 155-56 (1978)).

The United States has sovereign immunity except where it consents to be sued.  <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, <u>see</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 484-87 (1994), or against any of the individual defendants in their official capacities, <u>see</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).

IV.   <u>ANALYSIS</u>

A.   <u>Medical Care Claim</u>

Adeyi asserts that defendant Simms violated his Eighth Amendment right to adequate medical care by deliberately

disregarding plaintiff's medical problems when he assigned
plaintiff to snow removal and a top bunk.

The Eighth Amendment proscription against cruel and unusual
punishment requires that prison officials provide inmates with
adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04
(1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order
to set forth a cognizable claim for a violation of his right to
adequate medical care, an inmate must allege:  (1) a serious
medical need; and (2) behavior on the part of prison officials
that constitutes deliberate indifference to that need.  Estelle,
429 U.S. at 106; Natale v. Camden County Correctional Facility,
318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the
inmate must demonstrate that his medical needs are serious.
"Because society does not expect that prisoners will have
unqualified access to health care, deliberate indifference to
medical needs amounts to an Eighth Amendment violation only if
those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9
(1992).  The Third Circuit has defined a serious medical need as:
(1) "one that has been diagnosed by a physician as requiring
treatment;" (2) "one that is so obvious that a lay person would
recognize the necessity for a doctor's attention;" or (3) one for
which "the denial of treatment would result in the unnecessary
and wanton infliction of pain" or "a life-long handicap or
permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d

Cir. 2003)(internal quotations and citations omitted); see also
Monmouth County Correctional Institutional Inmates v. Lanzaro,
834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006
(1988).

The second element of the Estelle test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  See Natale, 318 F.3d at 582 (finding
deliberate indifference requires proof that the official knew of
and disregarded an excessive risk to inmate health or safety).
"Deliberate indifference" is more than mere malpractice or
negligence; it is a state of mind equivalent to reckless
disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S.
825, 837-38 (1994).  Furthermore, a prisoner's subjective
dissatisfaction with his medical care does not in itself indicate
deliberate indifference.  Andrews v. Camden County, 95 F. Supp.2d
217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145
(D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly,
"mere disagreements over medical judgment do not state Eighth
Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir.
1990).  "Courts will disavow any attempt to second-guess the
propriety or adequacy of a particular course of treatment ...
[which] remains a question of sound professional judgment."
Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d
Cir. 1979) (internal quotation and citation omitted).  Even if a
doctor's judgment concerning the proper course of a prisoner's

treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  <u>See</u> <u>Rouse</u>, 182 F.3d at 197.  The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  <u>Atkinson</u>, 316 F.3d at 266.  <u>See also</u> <u>Monmouth County Correctional Institutional Inmates</u>, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); <u>Durmer v. O'Carroll</u>, 991 F.2d 64 (3d Cir. 1993); <u>White v. Napoleon</u>, 897 F.2d 103 (3d Cir. 1990).

Here, Adeyi appears to satisfy the first prong to show serious need because he alleges that he had medical restrictions on file, especially a medical pass for a bottom bunk.  Moreover, Adeyi may have alleged facts sufficient to support a claim that Simms was deliberately indifferent to Adeyi's medical prescriptions, when he refused to relieve plaintiff from snow

removal and a top bunk assignment.  Thus, at this preliminary
stage, the Court will allow plaintiff's medical care claim to
proceed against defendant Simms.

However, because Adeyi has not alleged any facts to support
an Eighth Amendment violation or any other claim asserted in the
Complaint, as against the other named defendant, FCI Fort Dix
Health Services, the Complaint will be dismissed in its entirety
with respect to FCI Fort Dix Health Services.

B.  Denial of Due Process Claim

Next, Adeyi alleges that he was denied certain procedural
rights during his prison disciplinary proceedings as guaranteed
under Wolff v. McDonnell, 418 U.S. 539 (1974).

The Due Process Clause of the Fifth or Fourteenth Amendments
provides that liberty interests of a constitutional dimension may
not be rescinded without certain procedural protections.  U.S.
Const. amend. XIV.  In Wolff, the Supreme Court set forth the
requirements of due process in prison disciplinary hearings.  An
inmate is entitled to (1) written notice of the charges and no
less than 24 hours to marshal the facts and prepare a defense for
an appearance at the disciplinary hearing; (2) a written
statement by the fact finder as to the evidence relied on and the
reasons for the disciplinary action; and (3) an opportunity "to
call witnesses and present documentary evidence in his defense
when to do so will not be unduly hazardous to institutional
safety or correctional goals."  Wolff, 418 U.S. at 563-71.  An

14

inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994)(citing Wolff, 418 U.S. at 563-72).  However, in Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

The Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10, et seq.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.  Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).

DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d).  The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions.  28 C.F.R. § 541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  Id.

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff.  See Von Kahl, 855 F. Supp. at 1418.

Here, Adeyi asserts that he was denied his right to call witnesses at his disciplinary proceeding, that he did not receive the amended incident report in the time frame required, that the amended report was not delivered to him personally, and that the

16

proceeding was postponed for no reason.  However, Adeyi does not identify the witness he was prevented from calling at his hearing.  He also indicates that he received the report and was informed of the charges against him.

Rather, it appears to this Court, from the allegations in the Complaint, that Adeyi is challenging the incident report and disciplinary proceeding itself as untrue.  Adeyi is contesting Simms' allegations as biased.  Thus, to the extent that Adeyi is challenging the result of the disciplinary proceedings in alleging that the disciplinary charge is false, such claim must be dismissed.  The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights.  See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986)(holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), cert. denied, 485 U.S. 982 (1988); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff v. McDonnell, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation).  See also Creter v. Arvonio, No. 92-4493, 1993 WL 306425, at *7 (D.N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109, 1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988)(determining that "the alleged knowing falsity of the charge

17

[does not state] a claim of deprivation of a constitutionally
protected liberty interest ... where procedural due process
protections were provided").

In this case, Adeyi does not allege that he was denied an
institutional disciplinary hearing.  However, he does allege that
he was not permitted the opportunity to present witnesses and
documentary evidence to refute the charges.  Therefore, even if
Adeyi does not identify in his Complaint those witnesses or
documentary evidence that he was not allowed to present at his
disciplinary hearing, his allegations that he was precluded from
presenting evidence at his hearing may be sufficient at this time
to support his claim that his procedural rights accorded to him
under Wolff were violated; in other words, under the grounds
alleged, such a claim is plausible.  Therefore, this Court is
constrained at this preliminary stage to allow this claim to
proceed at this time.

C.  Retaliation Claim

It also appears that Adeyi is asserting a claim that
defendant Simms wrongly retaliated against him, by filing a false
disciplinary charge against plaintiff, in violation of Adeyi's
First Amendment rights.  Apparently, Simms wrote an incident
report after Adeyi complained about the snow removal detail and
the assignment to a top bunk.

"Retaliation for the exercise of constitutionally protected
rights is itself a violation of rights secured by the

18

Constitution ... ."  White v. Napoleon, 897 F.2d 103, 111-12 (3d
Cir. 1990).  To prevail on a retaliation claim, plaintiff must
demonstrate that (1) he engaged in constitutionally-protected
activity; (2) he suffered, at the hands of a state actor, adverse
action "sufficient to deter a person of ordinary firmness from
exercising his [constitutional] rights;" and (3) the protected
activity was a substantial or motivating factor in the state
actor's decision to take adverse action.  Rauser v. Horn, 241
F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229
F.3d 220, 225 (3d Cir. 2000)).  See also Anderson v. Davila, 125
F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist.
Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v.
Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with
approval in Allah, 229 F.3d at 225.

     Based on the allegations set forth in the Complaint, if
true, Adeyi may be able to support a claim of retaliation.  He
alleges that shortly after he complained about being forced to do
snow removal and being assigned to a top bunk, Simms filed the
false disciplinary report.

     A prisoner's ability to file grievances and lawsuits against
prison officials is a constitutionally protected activity for
purposes of a retaliation claim.  See Milhouse v. Carlson, 652
F.2d 371, 373-74 (3d Cir. 1981)(retaliation for exercising right
to petition for redress of grievances states a cause of action
for damages under the constitution); Woods v. Smith, 60 F.3d

1161, 1165 (5th Cir. 1995)(prison officials may not retaliate
against an inmate for complaining about a guard's misconduct),
cert. denied, 516 U.S. 1084 (1996).  Therefore, because plaintiff
alleges that the retaliation was the result of his filing
grievances, copies of which he attaches to his Complaint, he
appears to meet the requisite elements of a retaliation claim.
Namely, Adeyi has alleged (1) a constitutionally protected
activity, (2) that he was subjected to adverse action by
defendant, Simms, and (3) that the filing of grievances was the
motivating factor in Simms' decision to take adverse action
against plaintiff.  Accordingly, the Court will allow this claim
to proceed at this time, as against defendant, Simms.

D.   Deprivation of Property Claim

     Finally, Adeyi seems to assert a claim against Simms for
loss of personal property when plaintiff was sent to the Special
Housing Unit ("SHU") for a period of time.  Adeyi alleges that
Simms was notified to pack and secure plaintiff's personal
property, which was not done.  Upon Adeyi's return, his locker
was left open and certain items were missing.

     The Supreme Court has made clear that a negligent or
intentional deprivation of property does not violate the Due
Process Clause where meaningful post-deprivation remedies for the
loss are available.  Hudson v. Palmer, 468 U.S. 517, 530-36
(1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), overruled

in part on other grounds by, Daniels v. Williams, 474 U.S. 327,
328 (1986).

The U.S. Bureau of Prisons grievance procedure provides just
such an adequate post-deprivation remedy, even if Adeyi's
personal property was confiscated pursuant to an established
policy.  See, e.g., Barr v. Knauer, 2009 WL 962684 (3d Cir. April
10, 2009)(approving post-deprivation grievance remedy following
confiscation of electric razor); Tillman v. Lebanon County Corr.
Fac., 221 F.3d 410, 422 (3d Cir. 2000) (prison grievance
procedure satisfies procedural due process concerns where state
must take quick action or where it is impractical to provide
meaningful pre-deprivation process).  The existence of this post-
deprivation remedy forecloses any due process claim, even if an
inmate is dissatisfied with the result of the process.  Iseley v.
Horn, 1996 WL 510090, at *6 (E.D.Pa. Sept. 3, 1996).[3]

_____

[3]  This Court does not construe the Complaint as asserting a
claim under the Federal Tort Claims Act ("FTCA"), see 28 U.S.C.
§§ 1346, 2671 et seq., which authorizes claims against the United
States, "for money damages ... for injury or loss of property ...
caused by the negligent or wrongful act or omission of any
employee of the Government while acting within the scope of his
office or employment."  28 U.S.C. § 1346(b)(1).  The FTCA excepts
from this waiver of sovereign immunity certain categories of
claims, including claims "arising in respect of the assessment or
collection of any tax or customs duty, or the detention of any
goods, merchandise, or other property by any officer of customs
or excise or any other law enforcement officer."  28 U.S.C. §
2680(c)(emphasis added).  Resolving a split within the lower
federal courts, the Supreme Court has recently held that this
exception bars a federal prisoner's FTCA claim for loss of
property by Federal Bureau of Prisons officers.  See Ali v.
Federal Bureau of Prisons, 552 U.S. 214 (2008).
    Here, plaintiff does not allege that he has filed a federal
tort claim or otherwise exhausted his administrative remedies

Therefore, this Court finds that Adeyi has failed to state a claim for deprivation of liberty or property interests without due process, and this claim will be dismissed accordingly.

V.   CONCLUSION

For the reasons set forth above, plaintiff's Complaint will be dismissed in its entirety, as against defendant FCI Fort Dix Health Services, for failure to state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). However, plaintiff's claims against the remaining defendant Counselor Simms, denial of medical care, retaliation, and denial of disciplinary due process, will be allowed to proceed at this time.  Finally, plaintiff's claim against Counselor Simms alleging deprivation of property will be dismissed for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  An appropriate order follows.


 s/ Jerome B. Simandle 
JEROME B. SIMANDLE
United States District Judge

Dated:   **May 4, 2010**

---

with respect to a tort claim for deprivation of property before bringing this action.  However, this Court expresses no opinion as to whether Adeyi may be able to pursue an administrative tort claim with the Bureau of Prisons.

22